**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **J & J SPORTS PRODUCTIONS, INC. et al.,** | ) | **CASE NO. 1:13CV2047** |
| | ) | |
| Plaintiff, | ) | **MAGISTRATE JUDGE** |
| | ) | **GEORGE J. LIMBERT** |
| v. | ) | |
| | ) | |
| **JOSEPH D. FORCINA, et al.,** | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on a motion for summary judgment filed by Plaintiff, J & J Sports Productions, Inc. ("Plaintiff") on August 25, 2014. ECF Dkt. #30. Defendants Joseph D. Forcina and Maple Leaf Tavern, Inc. ("Defendants"), filed a brief in opposition to the motion on October 29, 2014. ECF Dkt. #32.

For the following reasons, the Court DENIES Plaintiff's motion for summary judgment on its claims made pursuant to 47 U.S.C. §§ 605 and 553. ECF Dkt. #30.

## I. FACTUAL AND PROCEDURAL HISTORY

On September 16, 2013, Plaintiff filed a complaint alleging that pursuant to a contract, it was granted the exclusive nationwide commercial distribution rights to "Star Power" Floyd Mayweather, Jr. v. Victor Ortiz Championship Fight Program, which included all undercard bouts and fight commentary occurring in the television broadcast of the event ("The Program"). ECF Dkt. #3 at 4. Plaintiff avers that The Program was telecast through pay-per-view nationwide on Saturday, September 17, 2011 and Plaintiff entered into subsequent sublicensing agreements with various commercial entities in North America, including in the State of Ohio, where it granted the entities limited sublicensing rights, specifically, the rights to publicly exhibit The Program in their commercial establishments in the hospitality industry, such as in bars, taverns, restaurants, etc. *Id.* at 4-5.

Plaintiff further alleged that The Program was telecast via pay-per-view nationwide on Saturday, September 17, 2011 and Defendants, through direct action or through the actions of its employees or agents, unlawfully intercepted, received, published, divulged, displayed, and/or exhibited The Program at their establishment in Cleveland, Ohio, fully knowing that The Program was not to be so intercepted, received, published, divulged, displayed, and/or exhibited. ECF Dkt. #3 at 5. Plaintiff averred that Defendants willfully engaged in such unauthorized and unlawful activity for purposes of direct and/or indirect commercial advantage and/or private financial gain. *Id*. at 5.

By engaging in such activity, Plaintiff alleged that Defendants violated 47 U.S.C. Section 605, et. seq. which prohibits the unauthorized publication or use of communications such as The Program and allows a private right of action. ECF Dkt. #3 at 5. Plaintiff further averred that Defendants also violated 47 U.S.C. Section 553, which prohibits interception or receiving any communications service, such as The Program, over a cable system, unless specific authorization was obtained, and also allows a private right of action. *Id*. at 3-4. In its last count, Plaintiff alleged that Defendants committed conversion by intercepting, receiving, publishing, divulging, displaying, and/or exhibiting The Program at their commercial establishment and each Defendant tortiously obtained possession of The Program and wrongfully converted it for their own use and benefit. *Id*. at 7-8. Plaintiff alleged that Defendants' acts were willful, malicious, egregious and intentionally designed to harm Plaintiff by depriving it of the commercial license fee to which it was entitled and in doing so subjected Plaintiff to severe economic distress and great financial loss. *Id*. at 8.

Plaintiff alleged damages against Defendants in the amount of $110,000.00 and attorney fees and costs for the alleged violation of 47 U.S.C. § 605, $60,000.00 and attorney fees and costs for the alleged violation of 47 U.S.C. § 553, and compensatory damages to be proven at a hearing, as well as exemplary and punitive damages, attorney fees and costs for Defendants' alleged conversion. ECF Dkt. #3 at 8-9.

On August 25, 2014, Plaintiff filed the instant motion for summary judgment. ECF Dkt. #30. On October 29, 2014, Defendants filed a brief in opposition to the motion. ECF Dkt. #32.

**II.    STANDARD OF REVIEW**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c).

This Court must view evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir.2008). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Daugherty v. Sajar Plastics*, Inc., 544 F.3d 696, 702 (6th Cir.2008). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases, the Court will decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Anderson*, 477 U.S. at 252.

Upon filing a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the nonmoving party's claim. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009) (citation omitted); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n. 12 (6th Cir.1989). The moving party, however, is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the moving party relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In response, if the moving party establishes the absence of a genuine issue of material fact, in order to defeat summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir.2009) (citation omitted). In this regard, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment"; rather, "Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379–80 (6th Cir.2007) (citation omitted); *see also Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir.2008)(citation omitted). Moreover, the non-moving party must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87, 106 S.Ct. 1348; see also *Barr v. Lafon*, 538 F.3d 554, 574 (6th Cir.2008).

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87, 106 S.Ct. 1348; *see also Anderson*, 477 U.S. at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict—whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." (emphasis in original) (internal quotations omitted)).

"If the defendant successfully demonstrates, after a reasonable period of discovery, that the plaintiff cannot produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment is appropriate." *Combs v. Int'l Ins. Co.,* 354 F.3d 568, 576 (6th Cir.2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

### **III. LAW AND ANALYSIS**

Plaintiff moves for summary judgment, asserting that no genuine issue of material fact exists regarding whether Defendants unlawfully intercepted and broadcast The Program at their commercial establishment and Plaintiff is therefore entitled to judgment as a matter of law on the issue of liability on all of its claims. ECF Dkt. #30 at 3.

Section 553(a)(1) of Title 47 of the United States Code provides:

> (a) Unauthorized interception or receipt or assistance in intercepting or receiving service; "assist in intercepting or receiving" defined
>
> > (1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1). Section 605(a) of Title 47 of the United States Code provides in relevant part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). Both statutes further provide that "any person aggrieved...may bring a civil action in a United States district court" and define "any person aggrieved" to include "any person with proprietary rights in the intercepted communication by wire or radio[.]" 47 U.S.C. §§ 553(c)(1), (d)(6); 47 U.S.C. §§ 605(d)(6), (e)(3)(A).

Moreover, in order to establish liability under these statutes, Plaintiff must demonstrate that Defendants unlawfully exhibited, published or divulged a privileged communication and the signal transmitting the communication was delivered to the intercepting party by way of a satellite or cable transmission. 47 U.S.C. §§ 553, 605.

In support of its motion for summary judgment, Plaintiff presents the affidavit of Joseph Gagliardi, President of Plaintiff, in order to show that Plaintiff had the exclusive commercial

-5-

distribution rights for The Program. ECF Dkt. #30-1 at 1. He attested that at no time did Plaintiff sub-license The Program to Defendants and because Plaintiff maintained the exclusive rights to the commercial broadcast of The Program, no other company was authorized to transmit The Program to Defendants. *Id*. at 2-3.

Plaintiff also submits the affidavit of Anita Myers, an investigator from Wayne & Associates investigative agency, who attested that on September 17, 2011 at 9:30 p.m., she entered the Maple Leaf Tavern at 15755 Broadway Avenue, Cleveland, Ohio, ordered one Coors Light and one Miller Genuine Draft. ECF Dkt. #30-2 at 1.She described the appearance of the woman bartender and attested that she observed four televisions and their locations inside of the establishment. *Id*. Ms. Myers further attested that she observed The Program on all four of the televisions and she described the undercard bout that she saw and the specific details of the boxers as they fought on the televisions. *Id*. She also identified the inside of the establishment, indicating that there was one stripper pole in the center of the actual bartop and another on a small stage on the right side of the bar. *Id.* She further attested that the wall behind the bar was mirrored and when she left the establishment at 9;45 p.m., she observed cars parked on the street directly outside the bar and she identified their license plate numbers. *Id*.

Defendants do not dispute that Plaintiff was granted and retains exclusive nationwide commercial distribution rights to The Program. ECF Dkt. #32 at 2. However, they "vehemently" dispute that they unlawfully intercepted and exhibited The Program at The Maple Leaf Tavern. *Id*. They attach the affidavit of Tracy Clark, the manager of the Maple Leaf Tavern, who was present on the night that Ms. Myers alleged that she entered the Maple Leaf Tavern, had two beers, and saw The Program being broadcast on the televisions inside. ECF Dkt. #32-1 at 1.

The Court finds that genuine issues of material fact exist in this case. Defendants do not rest upon mere allegations, but present the affidavit of Ms. Clark, who directly disputes the attestations of Ms. Myers. Ms. Clark attests that she was present as manager on the particular night that Ms. Myers alleges that she visited Defendant establishment. ECF Dkt. #32-1at 1. Ms. Clark attests that she has been sole manager of The Maple Leaf Tavern since 2009 and since this time, the establishment has never illegally or legally shown any HBO Pay Per View programming and they

did not televise The Program on the night in question. *Id.* Ms. Clark further indicated that since she has been manager, The Maple Leaf Tavern has never served Coors Light. *Id.* at 2. She also disputes the telephone number of The Maple Leaf Tavern that Ms. Myers provided in her affidavit and she noted that two other establishments located near The Maple Leaf Tavern, one named the Maple Grove Tavern and the other named Club Mapletree, are similar in size and business likeness to The Maple Leaf Tavern. *Id.*

While the Court can make reasonable inferences in favor of Defendants as the nonmoving parties, the conflicting affidavits present genuine issues of material fact that require a credibility assessment that may only be determined by the ultimate fact-finder. "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56 advisory committee's note to 1963 Amendment, Subdivision (e).

Accordingly, the Court DENIES Plaintiff's motion for summary judgment on all of its claims made pursuant to 47 U.S.C. §§ 605 and 553. ECF Dkt. #30. Plaintiff did not move for summary judgment on its conversion claim. ECF Dkt. #30 at 2, fn. 1. All claims therefore remain pending in this case.

IT IS SO ORDERED.

SIGNED AND ENTERED on this 16th day of December, 2014.

        */s/ George J. Limbert*
        GEORGE J. LIMBERT
        UNITED STATES MAGISTRATE JUDGE